

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1303 | **DATE** | March 26, 2002 |
| **CASE TITLE** | *Timothy Ferguson v. Larry G. Massanari, Acting Commissioner of the Social Security Administration* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, this Court GRANTS Defendant Larry G. Massanari, Acting Commissioner of the Social Security Administration's Motion for Summary Judgment [10-1] and DENIES Plaintiff Timothy Ferguson's Motion for Summary Judgment [11-1] and Motion for Remand [19-1]. The Court, having disposed of the litigants' claims, directs the clerk of the court to enter a Rule 58 judgment and to terminate this case from the court's docket. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | MAR 2 7 2002 | 25 |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | 02 MAR 26 PM 3: 57 | CDY | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| RTS | courtroom deputy's initials | FILED-ED 10 | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DOCKETED**

MAR 2 7 2002

| | | |
|---|---|---|
| **TIMOTHY FERGUSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Hon. Blanche M. Manning** |
| **v.** | ) | |
| | ) | **01 C 1303** |
| **LARRY G. MASSANARI, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Ferguson brings this action, pursuant to the Social Security Act ("the Act"), seeking judicial review of a final agency decision of Defendant Larry G. Massanari, Acting Commissioner of the Social Security Administration ("the Commissioner"), which found him not disabled and therefore not entitled to Supplemental Security Income ("SSI"). The present matter is currently before the Court on: (1) Ferguson's Motion for Remand, pursuant to 42 U.S.C. § 405(g); and (2) the parties' cross motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Ferguson's Motion for Remand and Motion for Summary Judgment are DENIED, while the Commissioner's Motion for Summary Judgment is GRANTED.



# BACKGROUND[1]

## A.     Procedural History

On February 13, 1997, Ferguson applied for SSI alleging that he has suffered from a disability since January 1, 1981. Ferguson contended that he suffers from diabetes, hypertension, gout, back pain, and visual and hearing impairments. After the Commissioner denied Ferguson's request for SSI, Ferguson requested and received a hearing before ALJ John Mondi on August 19, 1998.

After a hearing at which Ferguson appeared pro se, the ALJ denied Ferguson's claim. On administrative appeal, the Appeals Council of Social Security Administration ("the Appeals Council") remanded this case to the ALJ for further proceedings to consider evidence from a mental status medical expert in order to clarify the nature and extent of Ferguson's mental impairment, and, if Ferguson were found disabled, whether his alcoholism is a contributing factor material to the finding of disability. After a supplemental hearing on remand, the ALJ again denied Ferguson's claim. After the Appeals Council denied Ferguson's request for review, Ferguson brought the instant action appealing the denial of his request for SSI benefits.

## B.     Evidence Presented at the Hearings Before the ALJ

### 1.     Ferguson's Testimony

At the initial hearing on August 19, 1998, Ferguson testified that he stopped attending school after the ninth grade and had not been gainfully employed since 1981. He stated that he has gout, headaches, back problems, poor vision, trouble walking and breathing, gets tired quickly, and cannot stand for more than an hour or sit for long periods because of knee

---

[1]     The facts in the background section are taken from the Administrative Record ("AR") from the proceedings before the Administrative Law Judge ("ALJ").

problems. When asked if his condition is getting better or worse, Ferguson replied that if he drinks, it is worse, but if he does not drink, it is stable.

### 2.   Medical Evidence

Dr. Motiani examined Ferguson on April 10, 1997, when Ferguson was 47 years old. He noted that Ferguson is capable of mathematical computations and seems to be fairly intelligent, but found that Ferguson had virtually no hearing at 40 decibels, had trouble hearing in his left ear, and suffered from headaches. Dr. Motiani further found that Ferguson had good grip strength in his hands, could pick up objects ranging from five to ten pounds, and had normal knee and hip movements.

Additionally, Dr. Chaudry, a psychiatrist, examined Ferguson on April 15, 1997, and prepared a report which was submitted to the ALJ. Dr. Chaudry observed that Ferguson was alert and oriented to time, place and purpose of the examination, but when asked to name five large cities in the United States, Ferguson replied, "Chicago, New York, California, Mississippi." Dr. Chaudry diagnosed Ferguson with alcohol dependence and an antisocial personality disorder and opined that if Ferguson was granted SSI benefits, that due to his alcohol problem, he would not be able to use the benefits "judiciously."

Similarly, Dr. Devassy noted that if benefits were granted, Ferguson would need a payee so that he would not use the money to foster his alcoholism. Dr. Devassy reported that Ferguson appeared unkempt at the examination, with unclean clothes, strong body odor and alcohol on his breath and diagnosed Ferguson with alcohol dependence.

In addition, Dr. Wonais examined Ferguson on October 15, 1997, and reported that Ferguson had a full range of motion in the lumbar spine but suffered from gout. Dr. Wonais observed a congenital abnormality in Ferguson's left ear which has left him deaf in the left ear

and with decreased vision in the left eye. Dr. Wonais also observed a weakness in the left side of his facial nerve that manifests itself by limited motion in his left eyebrow. In regards to Ferguson's alcohol use, Dr. Wonais reported that while Ferguson has a history of heavy alcohol abuse, he shows no "stigmata" of alcohol abuse.

At the May 17, 2000 hearing before the ALJ, Dr. Ardon, a psychiatrist, testified as an impartial medical expert. Dr. Ardon testified that Ferguson had limited intellectual capacity and suffered from substance abuse and an antisocial personality disorder but that the effect of these disorders on daily living would be "slight." Dr. Ardon stated that when he was not drinking, Ferguson had the ability to: maintain regular attendance and be punctual; complete a normal workday and workweek without interruption from psychologically based symptoms; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; set realistic goals or make plans independently of others; sustain an ordinary routine without supervision; work in coordination or proximity to others without being distracted; make simple work-related decisions; ask simple questions; accept instructions and respond appropriately to criticism from supervisors; and get along with peers.

## C.    The ALJ's Findings

The ALJ entered his initial decision on June 2, 2000, denying Ferguson's claim for SSI benefits finding that Ferguson has: "severe" impairments including diabetes, alcoholism (in apparent remission for one year), gout, hypertension and back pain, as well as a congenital left ear abnormality with hearing loss. The ALJ, however, concluded that "the medical evidence does not establish impairments that would compromise [Ferguson's] ability to perform a significant range of medium work."

In his supplemental opinion on remand, the ALJ considered whether Ferguson has a mental impairment that would compromise his ability to perform unskilled work, and if so, whether alcoholism would be material to such a finding. The ALJ found that since no longer drinking, Ferguson's functional limitations are as follows: "slight" restrictions of activities of daily living; "slight" difficulties in maintaining social functioning; and "seldom" deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. Consequently, the ALJ concluded that Ferguson has the residual functional capacity to perform physical and mental work-related activities on a regular and continuing basis, and therefore, was not "disabled" under the Act and denied Ferguson's SSI claim.

## STANDARD OF REVIEW

Although the parties have styled their motions as motions for summary judgment, pursuant to Rule 56, motions contesting the validity of an ALJ's ruling are treated as motions for an order affirming or reversing the ALJ's decision, and the court's review is limited to a determination of whether the administrative record contains substantial evidence to support the ALJ's decision. Valie v. Charter, 916 F. Supp. 821, 823 n.2 (N.D. Ill. 1996).

Section 405(g) of the Act provides that district courts "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision" of the Commissioner. When exercising judicial review of final decisions of the Commissioner, the court is only to determine whether the decision of the ALJ is supported by substantial evidence, Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993), based on the record as a whole, Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir.1988). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, on appeal, the issue is not whether the evidence indicates that the plaintiff is disabled,

but whether the evidence supports the finding of the ALJ. Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The district court is prohibited from reweighing the evidence presented at the administrative hearing, Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir.1997), and factual findings, if supported by substantial evidence, shall remain undisturbed unless an erroneous legal standard was applied. Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir.1997). A finding may be supported by substantial evidence even if the reviewing court might have reached a different conclusion, Delgado v. Bowen, 782 F.2d 79 (7th Cir.1986), and the court may not reverse the ALJ's decision unless the evidence compels reversal. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

The ALJ must consider all relevant evidence and may not select and discuss only that evidence which favors his ultimate conclusion. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, and not the reviewing court. Stuckey v. Sullivan, 912 F.2d 178, 181 (7th Cir.1990). Thus, the resolution of conflicting evidence is not subject to judicial review. Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir.1989). With these standards in mind, the Court now addresses the parties' motions.

## ANALYSIS

Currently before this Court are the parties' motions for summary judgment and Ferguson's motion for a "sentence six remand." The Court will discuss each of these motions in turn.

### I. Ferguson's Motion for a Sentence Six Remand

Ferguson moves for a "sentence six remand," pursuant to 42 U.S.C. § 405(g), on the grounds that since the ALJ's decision, Ferguson has discovered medical treatment records from the Will County Health Department ("the Treatment Records") which were not part of the AR and are relevant to the issue of whether Ferguson is disabled under the Act.

Sentence six allows the district court to remand a case for consideration of additional evidence if the party seeking remand proves that the additional evidence is new and material, and that the claimant had good cause for failing to put the new evidence into the record prior to the administrative decision. 42 U.S.C. §405(g). Here, the Commissioner contends that remand is not proper because the Treatment Records are not material. To establish materiality, Ferguson must show a "reasonable probability" that the ALJ would have reached a different conclusion if presented with the Treatment Records. Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993).

Ferguson claims that the Treatment Records are material because they show that his alleged disability was severe enough to prevent him from obtaining any type of gainful employment. Reviewing the Treatment Records, this Court finds that they show that: (1) Ferguson experienced tingling and numbness in his hands and was diagnosed with diabetic neuropathy; (2) the examining doctor observed swelling in Ferguson's knee; and (4) he suffered from blurred vision and had difficulty reading because of his diabetes.

A careful reading of the ALJ's decision and the medical evidence in the AR, shows that evidence of the above maladies was contained in the AR. The ALJ stated that "[t]he record shows that the claimant has 'severe' impairments including a recent diagnosis of diabetes, for which he is being treated with insulin and histories of alcoholism....gout, hypertension, and back pain." (AR at 13.) However, the ALJ found that these severe impairments did not affect Ferguson's ability to obtain gainful employment. The information in the treatment records does not show that these "severe impairments" are any more severe in that they would alter the ALJ's finding that Ferguson could find gainful employment. Instead, the Treatment Records simply re-establish the impairments that the ALJ already considered. Therefore, this Court finds that there is not a "reasonable probability" that the ALJ would reach a different result if presented with the Treatment Records on remand.

Moreover, the instant matter is unlike cases where remand was proper. For example, in Sears v. Brown, 840 F.2d 394, 396 (7th Cir. 1987), the plaintiff suffered from glaucoma and claimed to be disabled as a result. The ALJ denied plaintiff's claim for benefits finding that although his glaucoma was a severe impairment, he was still able to do some light work under certain conditions. Id. One year after the ALJ's decision, a doctor completed a psychiatric report that revealed that in addition to glaucoma, the plaintiff suffered from serious and chronic psychiatric problems. Id. at 397. The plaintiff moved to remand the case to the ALJ in light of the new psychiatric report, but the district court denied the motion. Id. at 396. The Seventh Circuit found that the psychiatric report was material because the contested evidence was evidence of a new and distinct condition from the condition of glaucoma, upon which the ALJ based his decision. Id. at 401.

Conversely, in the instant matter, the Treatment Records are not evidence of a new and distinct condition. Instead, the Treatment Records simply re-establish the same conditions upon which the ALJ made his original decision. Therefore, this Court finds that the ALJ would not reach a different decision if presented with the Treatment Records. Consequently, Ferguson's Motion to Remand is DENIED.

## II. Ferguson's Motion for Summary Judgment

Ferguson contends that summary judgment is appropriate because: (A) Ferguson's waiver of counsel before the ALJ was not valid; (B) the ALJ failed to consider the extent to which Ferguson would be disabled based on psychological impairments, irrespective of alcohol abuse; and (C) the ALJ erred in finding Ferguson's testimony not credible. The Court will discuss each of these contentions in turn.

### A. Waiver of Counsel Before an ALJ

To determine if a SSI claimant validly waived the right to be represented by counsel before the ALJ, the Seventh Circuit in Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994), set forth a three part test. First, the claimant must knowingly and intelligently waive the right to counsel. Id. If the waiver was not knowing and intelligent, the Commissioner has the burden to show that the ALJ "fully and fairly" developed the record. Id. Finally, if the Commissioner meets this burden, the claimant may still prevail if the claimant shows prejudice. Id.

### 1. Knowing and Intelligent Waiver of the Right to Counsel

The claimant in a disability hearing has a statutory right to be represented by counsel, 42 U.S.C. § 406, but may waive the right to counsel if the waiver is "intelligent and knowing." Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991). To ensure an intelligent and knowing waiver of counsel, the ALJ must explain to the claimant: (1) the manner in which an attorney can

aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees. Binion, 13 F.3d at 245.

In Thompson, the claimant received written notice of his right to counsel which read in relevant part:

> **YOU HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY OR OTHER REPRESENTATIVE OF YOUR CHOICE.** A representative can help you obtain evidence, and can help you and your witnesses prepare for the hearing. Also, a representative can question witnesses and present statements in support of your claim . . .
>
> \* \* \* \*
>
> If you are unable to find a representative, we have enclosed a list of organizations which may be able to help you in locating one. As indicated on the enclosed list, some private attorneys may be willing to represent you and not charge a fee unless your claim is allowed. Your representative must obtain approval from the Social Security Administration for any fee charged. Also, if you are not able to pay for representation and you believe you might qualify for free legal representation, the list contains names of organizations which may be able to help you.

933 F.2d at 584 (emphasis in original). In addition to this notice, the ALJ discussed the right to counsel with the claimant at the hearing:

> ALJ: You were informed, Mr. Thompson, that you had a right to have a lawyer to represent you if you wanted to?
> CLMT: Yes.
>
> ALJ: And you gave up the right to have a lawyer represent you?
> CLMT: Well, I couldn't get one- - I couldn't get one by legal help, I couldn't get- - I wasn't able to pay for one.
>
> ALJ: Uh-huh. Okay, so you- - you tried to get one?
> CLMT: Yes.
>
> ALJ: And you didn't get a lawyer?
> CLMT: No.
>
> ALJ: So you know, you can- - you have a right to have a lawyer, you don't have to have a lawyer, it's up to you. You- - gave up your right to have a lawyer?
> CLMT: Yes.

Id. at 585. After evaluating the claimant's testimony at the hearing, together with the written notice, the Seventh Circuit, reversing summary judgment in favor of the Commissioner, concluded that the ALJ failed to fully discuss the benefits of legal representation. Id. Consequently, the Seventh Circuit held that the claimant did not knowingly and intelligently waive his right to counsel and remanded the case to the district court. Id.

Here, Ferguson received the following notices:

Notice of Hearing, May 17, 2000:

**You May Choose To Have A Person Represent You**
If you want to have a representative, please get one right away. You should also show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number.

Notice of Disapproved Claim, July 29, 1997:

If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security Office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

Unlike the notices Ferguson received, the notices in Thompson explained how an attorney can help obtain evidence, question witnesses, and help the claimant prepare for the proceeding. Thompson 933 F.2d at 585. Yet the court in Thompson held that the ALJ failed to fully discuss the benefits of representation. Id. The notices in this case explained less than those in Thompson, in that the above notices did not mention the way in which an attorney can assist in the proceedings. Instead, the notices merely told Ferguson that representation is possible – "You *can* have a friend, lawyer or someone else help you." In addition, Ferguson was told that if he "wanted" representation, he "should get it right away." These notices do not explain to a

claimant the way in which an attorney can assist in the proceedings. Consequently, this Court finds that the notices did not give Ferguson enough information to enable him to make a knowing waiver.

In addition to the written notices, Ferguson contends that the ALJ did not fully explain the manner in which an attorney can assist in the proceedings. Thompson makes clear that a knowing waiver of counsel requires the ALJ to give the pro se claimant "sufficient information to enable him to intelligently decide whether to retain counsel or proceed pro se." Thompson, 933 F.2d at 584. Here, the ALJ simply told Ferguson that "some individuals feel that their interests are better served if they are represented." (AR at 201.)

The importance of explaining the right to counsel becomes more important when the claimant has limited education or intelligence. See Vaile v. Chater, 916 F. Supp 821, 828-29 (N.D. Ill 1996). In such circumstances, the ALJ should explain the right to counsel in even greater detail and with increased attention toward ensuring that the claimant fully understands. See id.; Smith v. Secretary of Health, Educ. and Welfare, 587 F.2d 857, 860 (7th Cir. 1978). Here, the ALJ found that Ferguson had a limited education, (AR. at 12), and limited intellectual capacity. For example, Ferguson could not name five large cities in the United States and could not explain the difference between a tree and a bush. (AR. at 156.) In addition, Dr. Ardon testified that Ferguson had a personality disorder and a substance abuse disorder. Thus, the ALJ should have explained to Ferguson his right to counsel in even greater detail than required for an average claimant.

Although the ALJ was aware of Ferguson's limited intellectual capacity, the ALJ did not make a serious effort to explain Ferguson's right to counsel. At the August 19, 1998 hearing, the ALJ offered Ferguson a continuance to "see if you can get legal aid or some other attorney to

represent you. (AR at 200.) Ferguson replied, "But I don't think I should have to have - - I don't have no money to do anything." (Id.) The ALJ told Ferguson about legal aid groups that will "at times" represent individuals without cost and instructed Ferguson to call them to see if they would represent him. Ferguson replied, "Okay. Okay, well, what are you telling me? That I'm not capable of getting it?" (Id.) Finally, the ALJ offered Ferguson another continuance so Ferguson could contact a legal aid group. (Id.) Ferguson replied that "I figured I don't - - shouldn't have to do that because I don't have, you know, I'm here."(Id.) Then the ALJ said "All right, Sir, If you'd like to waive that we can go ahead with the hearing at this time." (Id.) Ferguson replied, "Okay." Given Ferguson's limited education and intelligence, it should have been apparent to the ALJ that he should have done more to effectively explain Ferguson's right to counsel. (Id.) Consequently, this Court finds that the ALJ did not fully explain to Ferguson the manner in which an attorney can aid in the proceedings, and therefore, Ferguson did not have sufficient information to enable him to make an intelligent decision on whether to retain counsel or proceed pro se. Accordingly, this Court finds that Ferguson's waiver of counsel was not made "knowingly" or "intelligently" and was therefore invalid.

In addition, as required by Binion, the ALJ failed to explain to Ferguson the possibility that he could secure counsel through a contingency agreement. Ferguson did receive a written notice that mentioned the possibility of a contingency agreement. The July 1997 Notice of Disapproved Claim stated "[t]here are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal." (AR at 37.) The ALJ, however, should explain the right to counsel and the role of an attorney in the administrative hearing in detail and with increased attention toward ensuring that the claimant fully understands where the claimant has limited education or intelligence. See

Smith, 587 F.2d at 860; Vaile, 916 F. Supp. at 828-29. Here, the AR, particularly Ferguson's testimony at the August 19 hearing, demonstrates that Ferguson did not understand what a contingency agreement was, irrespective of whether it was a possibility. Therefore, this Court finds that the ALJ did not adequately explain to Ferguson the possibility of obtaining an attorney through a contingency agreement. See Binion, 13 F.3d at 245.

Finally, the ALJ must explain the limitation on attorney's fees to 25 percent of past due benefits and required court approval of the fees. Binion, 13 F.3d at 245. Here, however, the record is void of any testimony that the ALJ explained the limitation on attorney's fees. Therefore, because the ALJ did not comply with the clear dictates of Binion, this Court finds that Ferguson's waiver of counsel was invalid.

## 2.    The ALJ's Duty to Develop the Record

Although Ferguson's waiver of counsel was invalid, this alone is not automatic grounds for remand. Smith, 587 F.2d at 860. If the ALJ does not obtain a valid waiver, the burden is on the Commissioner to show that the ALJ "fully and fairly" developed the record. Binion, 13 F.3d at 245. Where the claimant is unassisted by counsel, the ALJ has a heightened duty to inquire of and explore all the relevant facts. Id.

There is no bright line test to determine whether the ALJ has fully and fairly developed the record; each case turns upon its facts. Binion held that an ALJ fully and fairly develops the record if the ALJ "probes the claimant for all possible disabilities and uncovers all of the relevant evidence." 13 F.3d at 245. In Binion, the ALJ fully and fairly developed the record where the ALJ obtained all of the medical and treatment records from the claimant's treating physicians, obtained particularized statements for the claimant regarding her claim, and inquired into the medical evidence in plaintiff's file, her medication, pain, daily activities and physical

ability. Id. In Luna v. Shalala, 22 F.3d 697, 693 (7th Cir.1994), the ALJ fully and fairly developed the record where he extensively questioned the claimant about her pain, medication and activities, and reviewed the claimant's medical records. Conversely, in Hodes v. Apfel, 61 F. Supp. 2d 798, 812 (N.D. Ill. 1999), the ALJ did not develop a full and fair record because the ALJ disregarded the claimant's allegations of mental and psychological problems and failed to explore a critical ambiguity in the record regarding the claimant's ability to walk without a cane. Id. at 811-12.

Here, Ferguson alleged that he is entitled to SSI because he suffers from hypertension, gout, diabetes, hearing loss, back pain, alcoholism, bad nerves, knee problems, and psychiatric problems. In making the decision that Ferguson is not disabled under the Act, the ALJ examined various sources of evidence. For example, regarding alcohol abuse, the ALJ examined records from the WCHD which showed that Ferguson received counseling for alcohol abuse. Additionally, the ALJ considered the testimony of medical expert Dr. Ardon who testified that Ferguson had a personality disorder and a substance abuse problem, but that these conditions posed only "slight" work-related functional limitations. For hypertension, gout, diabetes, and hearing loss, the ALJ examined the WCHD Treatment Records which showed that Ferguson was receiving medication for these maladies. In addition, the ALJ considered the opinions of Drs. Norbury and Villaflor who testified that only visual and hearing impairments were present, notwithstanding a history of low back pain and gout. For knee problems, the ALJ considered the opinion of Dr. Norbury, who relied on a range of motion test revealing that Ferguson was "normal" in all joints. As for Ferguson's metal impairments, the ALJ specifically questioned Dr. Ardon, a psychiatrist, regarding how Ferguson's metal impairment would affect his ability to work. As discussed below, based on Dr. Ardon's opinion, the ALJ concluded that when not

15

drinking, Ferguson's metal impairments, other than alcoholism, did not prevent him from obtaining gainful employment.

Accordingly, by considering the foregoing evidence, this Court finds that the ALJ fully and fairly developed the record by probing the witnesses and the relevant medical records for all the relevant evidence relating to Ferguson's alleged disabilities.

### 3.    Prejudice to Ferguson

Even though this Court finds that the Commissioner established that the ALJ fully and fairly developed the record, Ferguson may rebut this showing by demonstrating prejudice or an evidentiary gap. Binion, 13 F.3d at 245. Ferguson can show prejudice by showing a significant omission from the record. Luna, 22 F.3d at 692. In showing prejudice, Ferguson must point to specific facts that were absent from the hearing or provide new medical evidence to show prejudice. Binion, 13 F.3d at 246; Nelson, 131 F.3d at 1236. In Thompson v. Sullivan, there was a significant omission where the ALJ failed to inquire into the present status and effects of alcoholism despite a diagnosis of chronic alcoholism and failed to order new x-rays to ascertain the extent of degeneration of claimant's spine when the last x-rays were nine years old. 933 F.2d at 587. Likewise, in Smith v. Apfel, there was a significant omission where the ALJ didn't order new x-rays to determine the extent of knee degeneration but instead relied on x-rays that were ten years old. 231 F.3d 433, 437-38 (7th Cir. 2000).

Here, Ferguson makes several arguments why the ALJ breached his duty to fully and fairly develop the record. Ferguson claims that the ALJ breached his duty to develop the record because certain Treatment Records from WCHD were absent at the second hearing. The problem with this claim is that it fails to set forth specific facts as required by Binion,13 F.3d at 246 (plaintiff must point to specific facts that were absent from the hearing or provide new

medical evidence to show prejudice), and as discussed above, the inclusion of the Treatment Records would not have altered the ALJ's decision.

Ferguson also contends that his medication records from the WCHD should have prompted the ALJ to "investigate further" into Ferguson's arthritis, gout, and hypertension. The ALJ, however, found that Ferguson suffers from these ailments, and therefore, this omission did not prejudice Ferguson. Moreover, after reviewing these records, this Court finds that they would not have affected the ALJ's decision that Ferguson was capable of obtaining gainful employment.

Furthermore, Ferguson claims that the ALJ should have investigated further to see if Ferguson had other mental impairments unrelated to his alcohol abuse. The ALJ, however, as discussed below, did consider Ferguson's alleged mental impairment and relied on Dr. Ardon's testimony that besides functional impairments caused by alcohol, "there was nothing then or now indicating any other mental impairment." Based on this testimony, the ALJ found that since no longer drinking, Ferguson's limitations are slight.

Finally, Ferguson claims that the ALJ breached his duty because he did not obtain testimony from a vocational expert. However, "a vocational expert is a not required or even essential part of a disability benefits hearing. The decision whether to employ the services of a vocational expert is entirely within the discretion of the ALJ." Binion, 13 F.3d at 246 (quoting Ehrhart v. Secretary of HHS, 969 F.2d 534, 540 (7th Cir. 1992). Moreover, Dr. Ardon's testimony described only "slight" work related impairments. Without evidence of a more serious impairment, the ALJ did not abuse his discretion by failing to obtain testimony from a vocational expert.

For the foregoing reasons, this Court finds that Ferguson's invalid waiver of counsel is not ground for remand because the ALJ developed a full and fair record, and Ferguson failed to show a significant omission from the record.

**B.     ALJ's Decision Regarding the Materiality of Alcohol Abuse**

Ferguson also contends that the ALJ erred by failing to consider the extent to which Ferguson could be disabled based on psychological impairments alone, irrespective of alcohol abuse. Specifically, Ferguson contends that the ALJ erred in finding that Ferguson could work when not drinking based on Dr. Ardon's testimony that Ferguson could not work when drinking.

Ferguson's claim is based on 20 C.F.R. §416.935(a), which provides that:

> General. *If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

(Emphasis added). The ALJ does not have to consider the effect of addiction or alcoholism unless first making a finding that the claimant is disabled. See Maggard v. Apfel, 167 F.3d 376, 378-79 (7th Cir. 1999); Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852-53. In determining if alcoholism is a "contributing material factor to a finding of disability," the individual must be found to be disabled if not addicted to drugs or alcohol. Davis v. Charter, 953 F. Supp. 561, 567 (N.D. Ill. 1996). "If the Commissioner finds that, but for an individual's drug addiction or alcoholism, he/she would not be disabled. then no SSI benefits are payable." Id.

Here, the ALJ found that Ferguson does not suffer from a mental impairment which makes him disabled under the Act, and therefore, the ALJ did not have to determine if alcoholism is a contributing factor to a determination of disability. After reviewing the relevant portions of the AR, the Court finds that this conclusion is supported by substantial evidence.

The AR established that Ferguson had a long history of alcoholic behavior. Dr. Ardon, a psychiatrist, testified that when drinking, Ferguson suffered from an impairment of alcoholism and also had an antisocial disorder. However, answering questions from the ALJ, Dr. Ardon testified that when not drinking Ferguson had only a slight mental impairment. Dr. Ardon further testified that the effect of Ferguson's antisocial personality disorder on daily living was "slight." Dr. Ardon stated that when he was not drinking, Ferguson had the ability to: maintain regular attendance and be punctual; complete a normal workday and workweek without interruption from psychologically based symptoms; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; set realistic goals or make plans independently of others; sustain an ordinary routine without supervision; work in coordination or proximity to others without being distracted; make simple work-related decisions; ask simple questions; accept instructions and respond appropriately to criticism from supervisors; and get along with peers. Moreover, Ferguson "categorically denied" any psychiatric problems to Dr. Chaudhry. Based on this evidence, this Court finds that the ALJ reasonably concluded that when not drinking, Ferguson's psychiatric problems does not prevent him from obtaining gainful employment.

## C. Ferguson's Credibility

Finally, Ferguson contends that the ALJ erred in rejecting Ferguson's credibility. The ALJ found that Ferguson's testimony regarding his functional limitations was not credible in light of the medical evidence, his inconsistent use of medications, and inconsistent testimony.

The reviewing Court must give special deference to the ALJ's determinations of witness credibility because the ALJ is in the best position to see and hear the witnesses and assess their veracity. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, an ALJ's credibility

determination will not be disturbed unless the claimant can show that it was patently wrong. See Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

Here, crucial to the ALJ's finding that Ferguson's testimony was not credible was his finding that the record did not contain a treating physician's opinion indicating a disabling functional limitation under the Act or its implementing regulations. Moreover, as detailed above, the opinions of the medical experts indicate that Ferguson's aliments did not result in his not being able to obtain gainful employment. Because the ALJ weighed the medical opinions against Ferguson's testimony of functional limitations, this Court finds that the ALJ's decision was supported by substantial evidence. Therefore, the ALJ did not err in rejecting Ferguson's credibility.

## III.    The Commissioner's Motion for Summary Judgment

The Commissioner has moved for summary judgment on the grounds that the ALJ's decision that Ferguson retained the residual function capacity to perform a range of unskilled medium work activity is supported by substantial evidence.

Under the Act, the claimant bears the burden of establishing that he is disabled under the Act. The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 1382c(a)(3)(A). To satisfy this definition, an individual must have a severe impairment which makes him unable to perform his previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 404.1505. A physical or mental impairment is "an impairment that results from anatomical, physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C).

In determining whether a claimant has met the burden of showing that he has a disability within the meaning of the Act, the ALJ uses a five-step inquiry. 20 C.F.R. § 404.1520. The ALJ must determine whether: (1) the claimant is presently employed; (2) the impairment is "severe"; (3) the impairment meets or exceeds one of a list of specific impairments; (4) the claimant can perform her former occupation; and (5) the claimant can perform any other work. Id.

Here, the ALJ found that Ferguson met steps one to four but not step five. The ALJ found that Ferguson had not worked since 1981 and has "severe" impairments including diabetes, alcoholism (in apparent remission for one year), gout, hypertension and back pain, as well as a congenital left ear abnormality with hearing loss. The ALJ, however, concluded that "the medical evidence does not establish impairments that would compromise [Ferguson's] ability to perform a significant range of medium work."

Likewise, in his supplemental opinion on remand, the ALJ considered whether Ferguson has a mental impairment that would compromise his ability to perform unskilled work, and if so, whether alcoholism would be material to such a finding. The ALJ found that since no longer drinking, Ferguson's functional limitations are as follows: "slight" restrictions of activities of daily living; "slight" difficulties in maintaining social functioning; and "seldom" deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. Consequently, the ALJ concluded that Ferguson has the residual functional capacity to perform physical and mental work-related activities on a regular and continuing basis, and therefore, was not "disabled" under the Act.

This Court therefore must determine whether substantial evidence supports the ALJ's determination that Ferguson retains the ability to perform medium work and is therefore not disabled because he did not meet the required criteria in step five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide with a rule in the Medical-Vocational Guidelines ("the Grid"). See 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987); Social Security Law and Practice, Vol. 3, § 43:1. If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

The Grid is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience. Walker, 834 F.2d at 640. The Grid was promulgated to simplify the process, and improve the consistency of disability determinations. Id. If the use of the Grid is appropriate, the ALJ may rely upon it for determining disability, and, in such a case, the Grid alone constitutes substantial evidence sufficient to uphold the decision of the Secretary. Id. The determination as to whether use of the Grid is appropriate is a question of fact, and the ALJ's use of the Grid will be upheld if substantial evidence supports its application. Id. at 641.

Here, the ALJ, applying Rule 203.18 of the Grid, found that based on Ferguson's functional capacity, age, education, and work experience that he could perform a significant number of medium unskilled jobs in the national economy and in Illinois and light work jobs under Rule 202.10.

Reviewing the AR, this Court finds that substantial evidence supports the ALJ's finding

that Ferguson's impairments would not significantly affect his ability to perform "unskilled

medium work," and therefore, Ferguson could find gainful employment.  For example,

Dr. Motiani found that Ferguson had good grip strength in his hands, could pick up objects

ranging from five to ten pounds, and had normal knee and hip movements.  Similarly, Dr.

Wonais reported that Ferguson could do a heel to toe walk, was able to squat, and had a

"normal" range of motion in all joints.  Likewise, Dr. Norbury reported that Ferguson's range of

motion was "normal" in all joints.

As for Ferguson's hearing, Dr. Motiani found that Ferguson had virtually no hearing at

40 decibels, had trouble hearing in his left ear, and suffered from headaches.  Likewise,

Dr. Villaflor opined that Ferguson had a communicative limitation due to hearing loss in the left

ear but that the hearing limitation was his only functional limitation.  Dr. Wonais, however,

reported that Ferguson can hear and understand a conversation at a distance of six feet without

any difficulty.

At the May 17, 2000 hearing, Dr. Ardon, a psychiatrist, testified that Ferguson had

limited intellectual capacity and suffered from substance abuse and an antisocial personality

disorder but that the effect of these disorders on daily living would be "slight."  Dr. Ardon stated

that when he was not drinking, Ferguson had the ability to: maintain regular attendance and be

punctual; complete a normal workday and workweek without interruption from psychologically

based symptoms; maintain socially appropriate behavior and adhere to basic standards of

neatness and cleanliness; set realistic goals or make plans independently of others; sustain an

ordinary routine without supervision; work in coordination or proximity to others without being

distracted; make simple work-related decisions; ask simple questions; accept instructions and respond appropriately to criticism from supervisors; and get along with peers.

Accordingly, based on the above medical evidence, this Court finds that substantial evidence supports the ALJ's finding that Ferguson's impairments would not significantly affect his ability to perform "unskilled medium work," and therefore, Ferguson could find gainful employment.

## CONCLUSION

For the foregoing reasons, this Court GRANTS Defendant Larry G. Massanari, Acting Commissioner of the Social Security Administration's Motion for Summary Judgment [10-1] and DENIES Plaintiff Timothy Ferguson's Motion for Summary Judgment [11-1] and Motion for Remand [19-1]. The Court, having disposed of the litigants' claims, directs the clerk of the court to enter a Rule 58 judgment and to terminate this case from the court's docket. It is so ordered.

ENTER

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: _3-26-02_